Filed 1/23/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

HECTOR MARTINEZ,

    Defendant and Appellant.

E066299

(Super.Ct.No. FWV1600421)

OPINION

APPEAL from the Superior Court of San Bernardino County. Gerard S. Brown, Judge. Affirmed in part; reversed in part.

Thomas K. Macomber, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Kristen Ramirez and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Hector Martinez guilty of (1) driving or taking a vehicle valued at over $950, without the owner's consent (Veh. Code, § 10851, subd. (a)); and (2) possessing burglary tools (Pen. Code, § 466). In regard to the vehicle offense, the jury found true the allegation that the crime was committed in association with a criminal street gang. (Pen. Code, § 186.22, subd. (b)(1)(A).) The court found true the allegation that defendant suffered a prior conviction for driving or taking a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a)). (Pen. Code, § 666.5, subd. (a).) The trial court also found true the allegations that defendant suffered three prior convictions for which he served prison terms. (Pen. Code, § 667.5, subd. (b).) The trial court sentenced defendant to prison for a term of eight years.

Defendant contends the gang enhancement should be reversed due to the gang expert's reliance on testimonial hearsay and case-specific hearsay. The People concede the gang expert's testimony included inadmissible hearsay, but assert the errors were harmless. We reverse the judgment in part.

**FACTUAL AND PROCEDURAL HISTORY**

A.      SUBSTANTIVE CRIME

On February 3, 2016, at approximately 4:30 a.m., City of Ontario Police Officer Devey watched a truck being parked at a motel in Ontario. The truck had been reported stolen in Chino. The officer saw defendant and Jorge Gonzalez[1] walk away from the

---

[1] In the reporter's transcript, Gonzalez's name is spelled Gonzales and Gonzalez. In the clerk's transcript, in the felony complaint, Gonzalez's name is spelled Gonzalez with an alias of Gonzales. We use the Gonzalez spelling.

truck holding coffee and a box of donuts; it was unclear which man had been driving the truck and which man was the passenger. The officer searched defendant and found a couple of shaved keys, which can be used to steal cars. The officer did not find keys for the truck in the possession of defendant or Gonzalez. The owner of the truck did not give defendant or Gonzalez permission to take his truck.

B. <u>GANG ENHANCEMENT</u>

Chino Police Officer Chris Chinnis testified as a gang expert. The Chino Sinners is a criminal street gang. One of the gang's primary activities is stealing cars. The Chino Sinners claim the entire City of Chino as their gang territory.

The Chino Police Department had eight field identification cards for Gonzalez: (1) in 2005, Gonzalez was with members of the Chino Sinners; (2) on September 12, 2015, Gonzalez admitted being a member of the Chino Sinners; (3) on November 1, 2015, Gonzalez told Officer Chinnis that Gonzalez lost an eye during a shooting involving a rival gang in Pomona; (4) on November 7, 2015, Gonzalez said he was going to McLeod Park in Chino to "make sure there was no quote 'niggers' at his park"; (5) Gonzalez was contacted on December 19, 2015; (6) Gonzalez was contacted on January 9, 2016; (7) on January 12, 2016, Gonzalez said he joined the Chino Sinners in 2010, that he had earned some gang tattoos, and that he planned "to put more work in for the gang in order to earn his skull and crossbones tattoo"; and (8) on January 24, 2016, Gonzalez admitted being a member of the Chino Sinners. Chinnis did not complete any of the eight field identification cards concerning Gonzalez.

3

Officer Chinnis looked at the field identification card dated January 12, 2016, to refresh his recollection concerning Gonzalez's tattoos. Gonzalez had (1) "Chino" tattooed on the back of his head; (2) various skulls on his arms; (3) "IE," as in Inland Empire; and (4) "CSR," referring to Chino Sinners rifa, rifa means "untouchable" or "baddest."

Officer Chinnis opined that defendant was an associate of the Chino Sinners. Defendant was heard on wiretapped phone calls discussing drug activity with members of the Chino Sinners. Defendant was related to two members of the Chino Sinners. On December 7, 2012, defendant was found in a car with drugs and with Byron Taylor, a Chino Sinners gang member. Chinnis read a report about the December 7 incident and discussed it with his partner, who was present during the stop. Chinnis did not know if defendant had any tattoos associated with the Chino Sinners.

Officer Chinnis opined that defendant's vehicle theft in the instant case was committed in association with the Chino Sinners due to Chinnis's "knowledge of [defendant], Mr. Gonzalez, [his] knowledge of the Chino Sinners gang, [his] knowledge of this incident, the fact that both individuals being documented as associates and/or members working together out in the middle of the night with burglary tools, driving a stolen vehicle. The mere fact that they're driving a stolen vehicle would allow then to commit additional crimes and not be detected, putting in work for the gang. Mr. Gonzalez stated in previous contacts he's trying to earn more tattoos, more respect by putting in work for the gang, and this is a good opportunity for him to put in work with another known associate to show his allegiance to the gang, as well as a way to earn

4

money, as well as to show they can contribute some money back up to the Mexican Mafia and be in good graces and good standing with the Mexican Mafia." Chinnis was not present when defendant was stopped and arrested in the instant case; however, the Ontario Police Department contacted the Chino Police Department for assistance with the case.

###### C.     MOTION TO EXCLUDE

Prior to Officer Chinnis testifying, defendant's trial counsel moved to exclude Chinnis's testimony concerning Gonzalez's field identification cards on the basis of hearsay. Defense counsel asserted Chinnis did not write the cards and therefore, testimony about the cards would be hearsay. The trial court responded that experts can rely on hearsay.

Defense counsel argued that the contents of the field identification cards constituted testimonial hearsay, and therefore it would violate *Crawford*[2] to rely upon the cards. The trial court explained that not every field identification card is completed for the purpose of prosecution and therefore, discussing the cards' contents would not violate *Crawford*. For example, a card could be completed for the purpose of later classifying a person in prison.

---

[2] *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*).

5

## DISCUSSION

### A. CONTENTION AND CONCESSION

Defendant asserts, "To the extent the hearsay evidence included case-specific hearsay, it required compliance with state evidence rules." Defendant then cites to *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*). The People concede *Sanchez* was violated by Officer Chinnis's testimony concerning (1) the wiretapped conversation in which defendant was discussing drugs; (2) the December 7, 2012, traffic stop in which defendant was found in a car with Byron Taylor, a Chino Sinners gang member; (3) the field identification cards concerning Gonzalez; and (4) Gonzalez's tattoos.[3]

### B. LAW

Hearsay "is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200.) In *Sanchez* our Supreme Court explained that expert witnesses can testify about their general knowledge, which has been gained from hearsay. However, expert witnesses cannot testify about case-specific facts learned via hearsay "unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Id*. at pp. 687.) For example, an expert could testify that a diamond is a symbol adopted by a particular street gang because that constitutes general information. However, an expert could not testify that "an associate of the defendant

---

[3] *Sanchez* was filed on June 30, 2016. (*Sanchez*, *supra*, 63 Cal.4th at p. 665.) Officer Chinnis testified on May 9, 2016. Thus, *Sanchez* had not been issued at the time of Chinnis's testimony. Therefore, although a *Sanchez*-specific objection or motion was not raised, we will address the issue.

6

had a diamond tattooed on his arm." The tattoo is case-specific evidence, which would need to be established by a witness who saw the tattoo, or by an authenticated photograph, or it would need to fall within a hearsay exception. (*Id.* at p. 677, 687.) We apply the abuse of discretion standard of review. (*People v. Clark* (2016) 63 Cal.4th 522, 590.)

### C. ANALYSIS

Officer Chinnis testified about defendant being heard on wiretapped telephone calls discussing drug activity with members of the Chino Sinners. The statements about drug activity were made outside of the court and were offered for their truth, thus causing the evidence to be hearsay. (See *Sanchez*, *supra*, 63 Cal.4th at p. 684 [case-specific facts are offered for their truth].) A transcript of the wiretapped phone call was not admitted into evidence. In other words, the phone call was not independently proven by competent evidence. The People do not assert that a hearsay exception is applicable to this evidence. (See *Id.*, at p. 686 [experts can relate as true case specific facts that "are covered by a hearsay exception"].)

Officer Chinnis testified about defendant being found in a car on December 7, 2012, with drugs and with Byron Taylor, a Chino Sinners gang member. Chinnis read a report about the December 7 incident and discussed it with his partner, who was present during the stop. Thus, Chinnis did not have personal knowledge of the stop. Chinnis's testimony about the stop came from statements by another person that were made outside of court, and the information was offered for its truth, thus causing the evidence to be hearsay. (See *Sanchez*, *supra*, 63 Cal.4th at p. 684 [case-specific facts are offered

for their truth].) Chinnis's partner did not testify about the stop, therefore there was not independent proof of the stop. The People do not argue that a hearsay exception is applicable to this evidence. (See *Id.* at p. 686 [experts can relate as true case specific facts that "are covered by a hearsay exception"].)

Officer Chinnis testified about field identification cards that he did not fill-out. The cards contained information specific to Gonzalez, such as Gonzalez having joined the Chino Sinners in 2010. The field identification card information was derived from other people's writings that were made outside of court and the information was offered for its truth, thus causing the evidence to be hearsay. (See *Sanchez*, *supra*, 63 Cal.4th at p. 684 [case-specific facts are offered for their truth].) The field identification cards were not offered as evidence. Therefore, the contents of the field identification cards were not independently proven by competent evidence. The People do not argue that a hearsay exception is applicable to this evidence. (See *Id.* at p. 686 [experts can relate as true case specific facts that "are covered by a hearsay exception"].)

Officer Chinnis looked at the field identification card dated January 12, 2016, to refresh his recollection concerning Gonzalez's tattoos. It does not appear that Chinnis had personal knowledge of Gonzalez's tattoos; his knowledge was derived from a writing that was made outside of court by another person, and Chinnis's testimony about the tattoos was offered for its truth, thus causing the evidence to be hearsay. (See *Sanchez*, *supra*, 63 Cal.4th at p. 684 [case-specific facts are offered for their truth].) Photographs of Gonzalez's tattoos or eyewitness testimony concerning the tattoos were not admitted as evidence. Therefore, the tattoos were not independently proven by

8

competent evidence. The People do not argue that a hearsay exception is applicable. (See *Id.* at p. 686 [experts can relate as true case specific facts that "are covered by a hearsay exception"].)

The foregoing evidence violated *Sanchez* because (1) it constituted hearsay, (2) it was case specific in that the evidence concerned particular people alleged to have been involved in this particular crime, (3) the hearsay was not independently proven by competent evidence, and (4) there is no argument that the hearsay falls within a hearsay exception. (*Sanchez, supra*, 63 Cal.4th at pp. 676, 680, 684-686.) In sum, *Sanchez* was violated by Officer Chinnis's testimony concerning the foregoing topics. Thus, the trial court erred.

### D. PREJUDICE

The improper admission of hearsay is an error of state law. The improper admission of testimonial hearsay is an error of federal law, in that it violates the Constitution's confrontation clause. (*Sanchez, supra*, 63 Cal.4th at pp. 686, 698.)

Under the Sixth Amendment's Confrontation Clause, a criminal defendant has the right to confront witnesses testifying against him/her. This right is not limited to in-court testimony. (*Crawford v. Washington* (2004) 541 U.S. 36, 42, 50-51.) If an accuser makes a formal out-of-court statement to a government officer, then the defendant's right to confront the accuser is triggered; the out-of-court "testimony" cannot be introduced via hearsay because the defendant has the right to confront the accuser. (*Id.* at p. 51.) Out-of-court testimonial statements include " 'affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine,

9

or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.' " (*Ibid.*)

The People concede Officer Chinnis's testimony about the wiretap and December 7, 2012, traffic stop constitute testimonial hearsay because that evidence resulted from police investigations into particular crimes. The People assert the hearsay derived from the field identification cards, including the descriptions of Gonzalez's tattoos, is not testimonial because field identification cards can be completed for the purpose of gathering general intelligence, not for the purpose of investigating a particular case.

For the sake of judicial efficiency, we accept the People's concession: the wiretap and December 7, 2012, traffic stop constitute testimonial hearsay, while the field identification card hearsay is non-testimonial. The field identification card evidence is not testimonial because Officer Chinnis explained that field identification cards were sometimes completed for the purpose of gathering general intelligence—not for any particular case—and other times they were completed as part of a criminal investigation. It is unclear in what context the field identification cards for Gonzalez were created. In other words, Gonzalez's cards may have been created in casual, non-testimonial situations.

Defendant asserts the error is prejudicial under both the state and federal prejudice standards. In *Sanchez,* "much of the hearsay was testimonial," therefore the high court applied the federal prejudice standard in conducting its harmless error analysis. (*Sanchez*, *supra*, 63 Cal.4th at p. 698.) Because the instant case involves a

mix of testimonial and non-testimonial hearsay, we will apply the federal standard. Accordingly, we examine whether the hearsay error was harmless beyond a reasonable doubt. (*Ibid.*)

"The gang enhancement applies to one who commits a felony 'for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.' (Pen. Code, § 186.22, subd. (b)(1).)"[4] (*Sanchez*, *supra*, 63 Cal.4th at p. 698.)

Without the hearsay evidence from the field identification cards, there is little proof that Gonzalez was a member of the Chino Sinners. Officer Chinnis testified that "in preparation for [his] testimony, [he] investigated a Jorge Gonzalez." Chinnis opined that Gonzalez is an active member of the Chino Sinners. Chinnis based that opinion "on other officers' investigations, [Chinnis's] review of police reports involving Mr. Gonzalez, as well as [Chinnis's] review of FI cards that [he has] seen that have come through consistently." In other words, Chinnis's opinion that Gonzalez is a gang member was based entirely upon hearsay because it was based upon other police officers' investigations, reports, and field identification cards. Gonzalez then set forth

---

[4] The enhancement also requires proof that "the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting two or more of the enumerated offenses (the so called 'predicate offenses') during the statutorily defined period.' " (*Sanchez*, *supra*, 63 Cal.4th at p. 698.) Defendant raises no issue with Officer Chinnis's background testimony concerning general gang behavior and attributes.

the information from the field identification cards to explain how it helped form his opinion. Without the erroneously admitted case-specific hearsay, there is little support for Chinnis's opinion that Gonzalez is a gang member.

In regard to defendant, Officer Chinnis opined that defendant was an active participant in the Chino Sinners based upon Chinnis's "knowledge of [defendant's] association and [defendant's] past criminal history." Chinnis explained how the wiretapped telephone call and December 7, 2012, traffic stop caused him to conclude defendant actively participated in the Chino Sinners. Additionally, Chinnis explained that defendant has relatives who are members of the Chino Sinners. Without the erroneously admitted hearsay evidence, i.e., the wiretap and 2012 traffic stop, Chinnis's opinion that defendant is an active participant in the Chino Sinners is based upon defendant having relatives who are members of the gang.

Without the hearsay evidence, the record reflects defendant committed a crime that is a primary activity of the Chino Sinners; the crime was committed within the City of Chino, which is the Chino Sinners' territory; and defendant has family members who are members of the Chino Sinners. There is no evidence that defendant is a member of the Chino Sinners, that he is close with his relatives who are members of the Chino Sinners, or that Gonzalez is a member of the Chino Sinners. Thus, other than the place and type of crime, there is nothing tying the instant crime to the gang. Further, there is nothing showing defendant knew he was in Chino Sinners' territory or knew that he was committing a crime that Chino Sinners' members tend to commit. Therefore, there is little proof that defendant had the specific intent to promote, further, or assist in any

12

criminal conduct by gang members (§ 186.22, subd. (b)  Because there is little proof of specific intent without the erroneously admitted hearsay, we cannot conclude beyond a reasonable doubt that the hearsay error did not contribute to the verdict obtained. (*Chapman v. California* (1967) U.S. 18, 24.)  In sum, the error was prejudicial.

The People assert the error was not prejudicial because (1) defendant was arrested with Gonzalez, who is a member of the Chino Sinners; (2) defendant was arrested in Chino Sinners' territory; (3) vehicle theft is a primary activity of the Chino Sinners; and (4) the vehicle theft would permit defendant and Gonzalez to commit additional crimes in support of the gang.  The People fail to explain what properly admitted evidence supports a finding that Gonzalez is a member of the Chino Sinners. Our review of the record reflects only inadmissible hearsay establishing Gonzalez's gang membership.  Without that evidence the record reflects that defendant committed a crime in gang territory and that gang members tend to commit the same crime.  This evidence fails to establish that defendant had the specific intent to promote, further, or assist in any criminal conduct by gang members (§ 186.22, subd. (b)(1)) because it fails to show defendant had any knowledge or awareness that he was in gang territory committing a crime that gang members tend to commit.  In sum, we find the People's argument to be unpersuasive.

## DISPOSITION

The gang enhancement (§ 186.22, subd. (b)(1)(A)) in count 1 is reversed.  The trial court is directed to issue an amended abstract of judgment and forward the

13

amended abstract to the appropriate agency/agencies.  In all other respects, the judgment is affirmed.

CERTIFIED FOR PUBLICATION

MILLER
               Acting P. J.

We concur:

SLOUGH
       J.

FIELDS
       J.

14